This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Mark K. Roders, appeals from the decision of the Summit County Court of Common Pleas convicting him of three counts of nonsupport of dependents. We affirm.
 I.
Roders and Pamela Breen were married in 1982, and three children were born of the marriage: Katherine, born June 13, 1984; Brian, born June 1, 1986; and Michael, born June 8, 1989. The couple divorced in 1994. At that time, Roders was a vascular surgeon and was earning between $150,000 and $200,000 per year. As part of the divorce decree, Roders was ordered to pay child support in the amount of $3250 per month.
Roders was indicted on September 4, 2001, on three counts of nonsupport of dependents, in violation of R.C. 2919.21(A)(2) and/or (B), felonies of the fifth degree, for the failure to support his three children from the period of January 1, 2000 through August 1, 2001. He entered a plea of not guilty, and the case proceeded to jury trial on December 6 and 7, 2001. The jury found him guilty on all three counts. The court subsequently sentenced him. This appeal followed.
 II. Assignment of Error "APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In his sole assignment of error, Roders asserts that his convictions are against the manifest weight of the evidence. Roders argues that the jury lost its way in rejecting his affirmative defense of inability to pay. We disagree.
When a defendant asserts that the conviction is against the manifest weight of the evidence,
 "[a]n appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
Only in the exceptional case, where the evidence presented weighs heavily in favor of the defendant, will the appellate court reverse and order a new trial. Id.
Roders was charged with nonsupport of dependents. He asserted the affirmative defense of inability to pay. R.C. 2919.21 provides:
 "(A) No person shall abandon, or fail to provide adequate support to:
"* * *
"(2) The person's child who is under age eighteen, * * *
"* * *
 "(B) No personal shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support."
A charge under division (A) or (B) is a misdemeanor of the first degree. R.C. 2919.21(G)(1). However, the charge is elevated to a fifth degree felony if the accused failed to provide support "for a total accumulated period of twenty-six weeks out of one hundred four consecutive weeks[.]" Id. The twenty-six weeks need not be consecutive. Id.
An affirmative defense exists to either of these two sections that the accused was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means. R.C. 2919.21(D). The burden of production of an affirmative defense and the burden of proof by a preponderance of the evidence for the affirmative defense is upon the accused. R.C. 2901.05(A). Therefore, to succeed in the affirmative defense, the accused must prove, by a preponderance of the evidence that: (1) he is unable to provide adequate or the court-ordered support; and (2) he did provide such support as was within his ability and means. See State v. Brown (1982), 5 Ohio App.3d 220,222; State v. Painter, 11th Dist. No. 2000-A-0093, 2002-Ohio-1436. "Lack of means alone cannot excuse lack of effort[.]" Brown,5 Ohio App.3d at 222. The defendant in a nonsupport proceeding is presumed to have the ability to support the child unless he raises the affirmative defense of inability to pay. State v. Risner (1997), 120 Ohio App.3d 571, 574, quoting State v. Schaub (1984), 16 Ohio App.3d 317, 319.
The evidence revealed the following. In 1994, Roders was ordered to pay child support in the amount of $3250 per month. In April 1995, Roders was involved in an automobile accident as a result of alcohol intoxication. He traveled to Michigan in order to undergo treatment for his alcoholism in a residential treatment facility; however, he left the facility before completing treatment. As a consequence of his failure to complete a treatment program for alcoholism, he was fired from his medical practice and suspended from practicing medicine.
In April 1998, the trial court reduced his child support obligations to $150 per month. Child support obligations were again adjusted in September 1998 to $480 per month. Records of the Summit County Child Support Enforcement Agency ("CSEA") indicate that from January 1, 2000 through August 1, 2002, Roders paid $3749.58 out of a total due of $9120. He failed to make any payments at all in seven of these nineteen months. During this period of time, child support payments were delinquent in the amount of $5370.42, or an amount equivalent to 48.48 weeks of payments. As of November 1, 2001, the total amount Roders owed in unpaid child support was $74,941.53.
Dr. Sameera Khan testified on Roders' behalf. Dr. Khan is a psychiatrist at Portage Path Behavioral Health. Roders was under her care from February 1998 until September 1998. During that time, she diagnosed Roders as having bipolar disorder, or manic-depressive disorder. Dr. Khan described Roders as having very high depression, even after taking medication. She testified that he was also experiencing psychotic episodes. She described him as being disheveled, unkempt, and obese. In her opinion, Dr. Khan believed that, at the time Roders was under her care, he was not capable of working.
Dr. Benton Wyse, a psychiatrist in private practice, also testified for the defense. Dr. Wyse has treated Roders since 1992. He described Roders' state when he saw him in the fall of 1998 as being very psychotic, depressed, and confused. In Dr. Wyse's opinion, Roders is functionally disabled. Dr. Wyse testified that in September 1998 Roders used $150 in cash to pay his bill.
Roders currently lives with Sally Salatsky, who testified that he does not leave the house. She stated that sometimes he sleeps all day or just sits and reads. On cross-examination, she admitted to working all day and attending classes at night, stating "I don't know what he does when I'm not there. * * * I'm not home very much." To her knowledge, Roders has not worked since 1995. She testified that she provides Roders with a place to live and food and occasionally buys his medication. She also stated that she has purchased gifts for his children on his behalf and has made child support payments for him.
Roders' fifteen-year-old son, Brian, testified that, in the summer of 2000 while Brian was visiting Roders, Brian asked him for money so that he and his siblings could purchase school supplies. Brian stated that Roders asked him how much he needed and took six one-hundred dollar bills out of a shoe box. Brian testified that he saw "wrapped hundreds, stacks of hundreds. Like, stacks of hundred dollar bills" in the shoe box. Brian also testified that when he asked his father for money on another occasion, Roders again gave him $600 in one-hundred dollar bills. Brian admitted that this time his father took the money from inside a closet. Brian did not see where the money came from.
A copy of an email from Roders to Pam Breen was admitted into evidence. It stated, in pertinent part:
 "You were always too interested in my [family's] cash. It was never yours. * * * Fortunately for me, I guess I've kept it, let's say, `a little discreet[.'] * * *
 "I'll keep the funds for MY kids future it will be disbursed by ME When, and If, I wish to release them.
 "You'll occasionally get your tiny, piddling, trickle just to keep the CSEA smiling[.]"
After a review of the evidence presented in this case, we find no indication that the jury lost its way and committed a manifest miscarriage of justice in rejecting Roders' affirmative defense of inability to pay and convicting him of nonsupport of dependents; therefore, we conclude that Roders' convictions on these counts were not against the manifest weight of the evidence. Roders' sole assignment of error is overruled.
 III.
Having overruled Roders' sole assignment of error, we affirm the judgment of the Summit County Court of Common Pleas.
SLABY, P.J., WHITMORE, J. CONCUR.